Michael Zoldan; AZ Bar No. 028128
**ZOLDAN LAW GROUP, PLLC**
5050 N. 40th St., Suite 260
Phoenix, AZ 85018
Tel & Fax: 480.442.3410
mzoldan@zoldangroup.com

Attorneys for Plaintiff
Ken Green

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Ken Green,** an Arizona resident,<br><br>    Plaintiff,<br><br>v.<br><br>**Pacifica Senior Living, LLC,** A Delaware Limited Liability Company,<br><br>    Defendant. | Case No.<br><br>**VERIFIED COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff Ken Green, for his Verified Complaint against Defendant Pacifica Senior Living, LLC ("**Pacifica**") hereby alleges as follows:

**PARTIES**

1.   Plaintiff is, and at all times relevant hereto was, a resident of Maricopa County, Arizona.

2.   Upon information and belief, Pacifica is a Delaware company which is registered to conduct business and is currently doing business in the State of Arizona.

**JURISDICTION AND VENUE**

3.   All acts complained herein occurred in Maricopa County, Arizona, and this Court has jurisdiction over the parties and subject matter set forth in this Complaint pursuant the Family and Medical Leave Act ("**FMLA**"), 29 U.S.C. § 2601, *et seq*. and the

Arizona Employment Protection Act ("**AEPA**"), A.R.S. § 23-1501, *et seq*.

4. This Court has federal question subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 in that his FMLA claim set forth in this Complaint arises under federal law.

5. Plaintiff's state law claim is sufficiently related to his federal claim that it forms part of the same case or controversy. The Court therefore has supplemental jurisdiction over Plaintiff's state claim pursuant to 28 U.S.C. § 1367.

6. The employment practices alleged to be unlawful were committed within, and had their primary effect in, the jurisdiction of the United States District Court for the District of Arizona.

7. Plaintiff was, at all relevant times, an employee of Pacifica within the meaning of the FMLA and the AEPA.

8. Plaintiff was an "eligible employee" within the meaning of the FMLA.

9. At all relevant times, Pacifica has continuously been an employer within the meaning of the FMLA.

10. Personal jurisdiction in this Court is proper.

11. Venue in this Court is proper.

## FACTUAL ALLEGATIONS

12. Green was employed by Pacifica at its Scottsdale Village Square location, most recently as the Executive Director.

13. In this capacity, Green oversaw the operations of the Defendant's Scottsdale Village Square senior living center.

14. Over the course of his tenure, Green received several pay raises and

accolades for his excellent performance.

15. Green received pay raises on August 10, 2013, July 25, 2015, July 23, 2016, September 16, 2017, January 31, 2018, January 31, 2019, January 31, 2020, and January 31, 2021.

16. During the same time period in which Green's pay was increased, Green never received any negative performance criticism or disciplinary action.

17. Green was an accomplished performer and exemplary employee for Pacifica.

18. In July 2021, a major rain and windstorm caused significant damage to the Scottsdale Village Square facility.

19. As a result of storm damage, there were leaks in the roof, leaks around electrical fixtures, and water was permeating throughout various locations in the building where both residents and employees often crossed.

20. On July 23, 2021, Green emailed Defendant's senior management employees, Divya Sappa, Andy Gupta, and his immediate supervisor, Jackie Bobbit, about the unsafe working and living conditions.

21. Green also provided pictures to Pacifica senior management to demonstrate how dire and unsafe the living conditions were. For example, the dining room was flooded, water was leaking from various locations in the roof which required a trash can to collect the water, and the ceiling and walls were becoming dilapidated due to water damage and neglect.

22. Green thereafter created a report regarding these conditions which included a third-party inspector's comments on the poor job and poor repairs to the roof.

23. Pursuant to Arizona Administrative Code R9-10-425(A)(1)(b), a facility

such as Scottsdale Village Square must be free from a condition that may cause a resident or an individual to suffer physical injury.

24. Pursuant to Arizona Administrative Code R9-10-410(B), a resident must be treated with dignity, respect, and consideration.

25. Pursuant to Arizona Administrative Code R9-10-425(A), a facility must be free from a condition or situation that may cause a resident or an individual to suffer physical injury.

26. Pursuant to Arizona Administrative Code R9-10-426(A), a nursing care institution must maintain a nurse call system, proper furniture to meet the resident's needs, a curtain for privacy, and a closet, among other requirements.

27. Due to the damage to the facility, residents were kept in untenable conditions such as having their beds in the hallway for over ten days, in violation of the Arizona Administrative Code.

28. Similarly, the facility – through Defendant – is responsible to ensure that policies and procedures are followed with respect to maintaining the safety of residents under A.A.C R9-10-803(C).

29. The aftermath of the storm exposed countless safety and health infractions that Green reasonably believed violated Arizona law, including, inter alia, the Arizona Administrative Code sections outlined above.

30. When Green's initial attempts to remedy what he understood to be violations of Arizona state law were ignored, Green continued his attempts to remedy the unsafe conditions by complaining to Defendant's upper management officials, which was met with resistance and hostility from Defendant.

31. On September 10, 2021, Green participated in a conference call with Pacifica's owner, Deepak Israni, Sean Downey, and Carl Knepler.

32. During the call, Green was berated because he was allegedly not making enough money at the facility. The discontent from Pacifica's senior management team was based on Green's continued insistence that Pacifica make legally required changes to bring the facility up to code.

33. Four days later, Knepler, Downey and another corporate employee met at the Scottsdale Village Square location to again yell at and berate Green due to his repeated complaints to ensure a safe living space for the elderly residents of the facility.

34. Shortly thereafter, upper management became distant with Green and began to communicate with his staff without him present. Pacifica's upper management also insisted on the hiring of a marketing representative without Green's recommendation.

35. On December 13, 2021, Green received an email from his supervisor, which was supposedly inadvertently sent to Green, complaining that he "makes everything so so so difficult."

36. Green understood the reference to relate to his numerous complaints about the unsafe – and illegal – hazardous living conditions.

37. On December 17 2021, Green took FMLA leave due to his own serious health condition.

38. Pacifica approved Green's FMLA leave request which lasted until approximately January 21, 2022.

39. On January 21, 2022, Green informed Pacifica that he was ready to return to work.

40. On January 22, 2022, Pacifica notified Green that his employment would be reinstated on January 24, 2022 but that he would no longer be returning to Scottsdale Village Square and was to report to an entirely different facility, Pacifica Senior Living Paradise Valley.

41. Green was not informed why he was being removed from the facility that he enjoyed for over a decade nor did anyone from Pacifica discuss the location change with him prior to January 22.

42. The Paradise Valley location – which upon information and belief is also owned by Defendant - is an assisted living facility that does not have the same licensure for acute patients that Green served at the Scottsdale Village Square nursing home.

43. Although Green was informed that he would be the Executive Director of the Paradise Valley facility, that location already had an Executive Director.

44. Upon arrival at the Paradise Valley location on January 24, 2022, Green was instructed to sit in the lobby and wait for someone at the facility to meet him.

45. Green was left to sit in the lobby for an hour and fifteen minutes, by himself, before he was met by someone from the facility.

46. When someone from the Paradise Valley facility finally met Green in the lobby, he was brought to his office, which was not an actual office but rather was a small "Med Room" with a chair.

47. Green's "office" was not even equipped with a company phone or a computer that could access emails, Company files and information.

48. Green was not provided with a key to access his makeshift "office".

49. On January 26, 2022, Green was provided with an unprecedented write-up.

50. Green received the discipline because he purportedly did not adhere to a 9:00am – 5:00pm work schedule that he was never informed of and never had for his entire tenure at Scottsdale Village Square.

51. Green also received the discipline on January 26th because he not submit a daily report.

52. As with the work schedule, no one instructed Green that he was required to generate a daily report.

53. Green was not required to submit daily reports as the Executive Director of Scottsdale Village Square.

54. The write-up on January 26th was the first instance in which Green was disciplined while employed by Pacifica.

55. On January 28, 2022, Green was fired for allegedly having an expired fingerprint clearance card. At no point prior to being informed that he was fired, did anyone tell Mr. Green that he needed to update his fingerprint card.

56. Further, under A.R.S. § 36-411(H), Green was not required to meet the fingerprint requirements of the statute because he was a long time Pacifica employee that had previously met the fingerprinting and background check requirements.

57. Pacifica's reasons for terminating Green are pretextual. The real reason Green was fired was because he complained about Arizona law violations and subsequently took FMLA leave.

## COUNT I
## INTERFERENCE IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT
## 29 U.S.C. § 2615

58. Plaintiff reasserts and realleges each and every allegation in this complaint

as if fully set forth herein.

59. It is unlawful for an employer to interfere with, restrain, or deny the exercise of any right under the FMLA. 29 U.S.C. § 2615.

60. At all relevant times, Defendant employed more than 50 employees and as such, is an employer for purposes of FMLA, subject to FMLA requirements.

61. Plaintiff was an "eligible employee" entitled to take leave pursuant to the FMLA.

62. Plaintiff has a "serious health condition" as defined by the FMLA and was incapacitated as a result of that condition.

63. Plaintiff provided sufficient notice of his need to take leave and was on continuous leave from December 17, 2021 until January 22, 2022.

64. Defendant terminated because he requested and subsequently took a period of medical leave, interfering with Plaintiff's rights under the FMLA.

65. The change in the Scottsdale location to the Paradise Valley location, the unwarranted discipline Plaintiff received upon his return to leave, and the pretextual reason for his termination, *inter alia*, demonstrate that Defendant terminated Plaintiff because he took FMLA leave.

66. As a direct, intentional, and willful consequence of such illegal conduct, Plaintiff suffered adverse employment actions including termination of employment.

67. Plaintiff is entitled to recover damages against Defendant in an amount to be proven at trial.

## COUNT II
## ARIZONA EMPLOYMENT PROTECTION ACT – A.R.S. 23 - 1501

68. Plaintiff reasserts and realleges each and every allegation in this complaint

as if fully set forth herein.

69. At all relevant times, Plaintiff was an employee under A.R.S. § 23-1501.

70. At all relevant times, Defendant was an employer under A.R.S. § 23-1501.

71. Defendant violated A.R.S. § 23-1501(3)(c)(ii) by terminating Plaintiff's employment in retaliation for his disclosure in a reasonable manner that he had information or a reasonable belief that the employer, or an employee of the employer, had violated, was violating, or would violate Arizona law to either the employer or a representative of the employer who Plaintiff reasonably believed was in a managerial or supervisory position and had the authority to investigate the information provided by the employee and to take action to prevent further violations of Arizona law.

72. Plaintiff reasonably believed that Defendant was violating Arizona law in connection with its failures to maintain a safe and unhazardous nursing home and senior living facility.

73. Plaintiff disclosed the violations of law to Defendant in a reasonable manner.

74. Plaintiff disclosed these violations of law to individuals in managerial or supervisory positions that had the authority to investigate or take action to prevent further violations.

75. Plaintiff was terminated for making these complaints.

76. The change in the Scottsdale location to the Paradise Valley location, the unwarranted discipline Plaintiff received upon his return to leave, and the pretextual reason for his termination, *inter alia*, demonstrate that Defendant terminated Plaintiff he engaged in protected activity under the A.R.S. § 23-1501.

77. Plaintiff was damaged in an amount to be proven at trial.

## CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant, as follows:

A.  An award of damages for all counts in an amount to be proven at trial;

B.  An award of back pay and front pay;

C.  An award of compensatory and punitive damages in an amount to be proven at trial;

D.  Liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

E.  Reasonable attorneys' fees and other costs and expenses under the FMLA pursuant to 29 U.S.C.A. § 2617(3);

F.  Pre- and post-judgment interest;

G.  Any other remedies or judgments deemed just and equitable by this Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

RESPECTFULLY SUBMITTED September 21, 2022.

**ZOLDAN LAW GROUP, PLLC**

By: /s/ Michael Zoldan
5050 N. 40th St., Suite 260
Phoenix, AZ 85018
Attorneys for Plaintiff Ken Green

**VERIFICATION**

Plaintiff Ken Green declares under penalty of perjury that he has read the foregoing Verified Complaint and is familiar with the contents thereof. The matters asserted therein are true and based on his personal knowledge, except as to those matters stated upon information and belief, and as to those matters, he believes them to be true.

_____
Ken Green